In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3550

Georgeen Stevens,

Plaintiff-Appellant,

v.

Illinois Department of Transportation,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Illinois, Benton Division.
No. 96-4358--James L. Foreman, Judge.


Argued December 8, 1999--Decided April 11, 2000


        Before Harlington Wood, Jr., Coffey and Flaum, Circuit
Judges.

        Flaum, Circuit Judge.  Georgeen Stevens brought
suit alleging that her employer, the Illinois
Department of Transportation ("IDOT"), discharged
her for reasons related to her disability in
violation of the Americans with Disabilities Act
("ADA" or "Act"), 42 U.S.C. sec. 12101 et seq.
After a jury returned a verdict in favor of
Stevens, the district court granted judgment
notwithstanding the verdict in favor of IDOT. For
the reasons stated herein, we vacate the judgment
for IDOT and dismiss this case for lack of
subject matter jurisdiction.

I.  BACKGROUND

        Georgeen Stevens worked as a highway maintainer
at IDOT's District 7 Traffic Operations Division
in Effingham, Illinois for approximately five
years, from 1991 to 1996. Maintainers in that
division are responsible for repairing and
replacing road signs, striping lines on
interstate highways, installing and maintaining
highway lights and removing snow. On September
20, 1993, a mechanical hand lever pump she was
operating on the job broke and struck Stevens in
the right chest area injuring her. As a result of
this injury, Stevens began to suffer from a
painful neurological condition known as reflex
sympathetic dystrophy. Because of this condition,

Stevens was unable to lift more than ten pounds with her right arm or stay outside in temperatures lower than fifty degrees for longer than fifteen minutes without extreme pain.

Stevens's doctor wrote various letters to IDOT stating that she should be provided with accommodations for her disability but that her ability to work depended on her ability to withstand pain. The doctor stated that she should be allowed to determine her own work limitations and that her condition would not worsen or improve even if she worked without the recommended accommodations. Stevens requested accommodation from IDOT but informed her supervisors that she was willing to work without accommodation if it could not be provided.

Stevens filed a worker's compensation claim and it was determined that she suffered a 30 percent permanent partial disability as a result of the accident. After the worker's compensation decision, IDOT fired Stevens because it concluded that she was not able to perform the functions of her job. Stevens then filed claims in federal district court under Title VII for sex discrimination and under the ADA for disability discrimination. Her Title VII claim was dismissed on summary judgment and was not appealed. The ADA claim went to a jury trial where a verdict was returned in favor of Stevens.

After trial, IDOT filed a motion to vacate the verdict, claiming that the district court did not have jurisdiction to hear the claim because IDOT was immune from suit under the Eleventh Amendment. The trial court denied this motion. The trial court then overturned the verdict, entering a judgment as a matter of law in favor of IDOT because it found that there was not substantial evidence to support the jury's conclusion that Stevens could perform the essential functions of her job, a critical element of her ADA claim. Stevens now appeals.

II. DISCUSSION

In our recent decision Erickson v. Board of Governors, No. 98-3614, 2000 WL 307121 (7th Cir. Mar. 27, 2000), we reexamined our decision in Crawford v. Indiana Dep't of Corrections, 115 F.3d 481, 487 (7th Cir. 1997), in light of the subsequent Supreme Court decisions in Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 119 S.Ct. 2199 (1999), and Kimel v. Florida Bd. of Regents, 120 S.Ct. 631 (2000), in which the Court more precisely defined the limits of Congress's Section 5 power to enforce the Fourteenth Amendment. In Erickson, we concluded that the ADA was not enacted pursuant

to a valid exercise of Congress's Section 5 power so that Congress had not effectively abrogated the States' Eleventh Amendment immunity for claims brought under that Act. We follow the majority's conclusion in Erickson and we find that IDOT, a department of the State of Illinois, is immune from suit brought by an individual in federal court under the ADA./1 We write further to more fully explain the reasoning by which we have reached this conclusion./2

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. sec. 12101(b)(1). The ADA specifically targets discrimination in two broad areas: employment (Title I) and public accommodations (Title II). This case only involves allegations of employment discrimination that fall under Title I. Under Title I, a covered entity may discriminate in two ways: disparate treatment of or failure to accommodate a disabled employee. 42 U.S.C. sec. 12112; see Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1032 (7th Cir. 1999); Weigel v. Target Stores, 122 F.3d 461, 464 (7th Cir. 1997). To make out a claim under the ADA, an individual must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation. 42 U.S.C. sec.sec. 12111-12; see Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir. 1996). It is a defense to an ADA claim that an employment criterion that adversely impacts disabled persons is "job-related and consistent with business necessity." 42 U.S.C. sec. 12113; see EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1283 (7th Cir. 1995).

The Eleventh Amendment renders a State immune from any suit brought by an individual in federal court unless the State has consented to being sued in that forum. See Kimel, 120 S.Ct. at 640 ("[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States."); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996)./3 Congress may abrogate the States' Eleventh Amendment immunity and provide for federal jurisdiction over individual suits against States. However, Congress only has this power to abrogate when it is acting pursuant to its enforcement power under Section 5 of the Fourteenth Amendment. See Kimel, 120 S.Ct. at 644; Seminole Tribe, 517 U.S. at 58. Congress may not nullify States' Eleventh Amendment immunity when it is operating under its Article I powers. Kimel, 120 S.Ct. at 643-44; Florida Prepaid, 119

S.Ct. at 2205; Seminole Tribe, 517 U.S. at 72-73.

Congress has abrogated Illinois's Eleventh Amendment immunity, if it 1) unequivocally expressed its intent to abrogate the States' Eleventh Amendment immunity through the ADA, and 2) acted pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment. See Kimel, 120 S.Ct. at 640; Florida Prepaid, 119 S.Ct. at 2205; Seminole Tribe, 517 U.S. at 55. The text of the ADA makes clear Congress's explicit intent to abrogate the States' Eleventh Amendment immunity for suits brought by individuals under that statute. See 42 U.S.C. sec. 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for violation of this chapter."); 42 U.S.C. sec. 12101(b)(4) ("It is the purpose of this chapter . . . to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment . . . ."). Therefore, it is only necessary to discuss the scope of the authority granted to Congress under Section 5 to enact the ADA.

Congress's enforcement power under Section 5 is not unlimited. See City of Boerne v. Flores, 521 U.S. 507, 518-19 (1997). Section 5 only authorizes Congress to enact legislation that remedies or prevents Fourteenth Amendment violations./4 See Kimel, 120 S.Ct. at 644. In order for a legislative enactment to be a valid exercise of this power, Congress must "identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct." Florida Prepaid, 119 S.Ct. at 2207. This does not mean that Congress may only prohibit through federal legislation conduct that is itself unconstitutional under the Fourteenth Amendment. Federal legislation may prohibit "a somewhat broader swath" than that which is directly forbidden by the Amendment, provided that the target of the legislation is to remedy or prevent unconstitutional conduct. Kimel, 120 S.Ct. at 644; see City of Boerne, 521 U.S. at 518. The ultimate test is that "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne, 521 U.S. at 520.

The analysis begins with identifying the conduct targeted by Congress through the legislation in question. The ADA purports to have the broad goal of "the elimination of discrimination against individuals with disabilities." 42 U.S.C. sec. 12101(b)(1). The types of discrimination at which

the statute is aimed are recited in the "Findings and purpose" section of the Act. 42 U.S.C. sec. 12101(a). Some of the "various forms of discrimination" outlined by Congress as targeted by the Act include:

outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.

42 U.S.C. sec. 12101(a)(5). The ADA is tailored to achieving its goal in part by forbidding employment discrimination against the disabled and imposing an affirmative duty to provide reasonable accommodation on public and private employers. See 42 U.S.C. sec. 12112.

Having identified the remedial and preventative goal of the statute, we next proceed to examine whether the conduct targeted by the ADA constitutes a violation of the Fourteenth Amendment. We start with the fundamental principle that it is the judiciary, not the legislature, that determines what conduct violates the provisions of the Fourteenth Amendment. See Kimel, 120 S.Ct. at 644 ("The ultimate interpretation and determination of the Fourteenth Amendment's substantive meaning remains the province of the Judicial Branch."); City of Boerne, 521 U.S. at 519. Therefore, we look to judicial rulings, not congressional pronouncements, in our consideration of whether the conduct targeted by the ADA is unconstitutional.

Disabled individuals, like any class, are protected by the Equal Protection Clause of the Fourteenth Amendment. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446 (1985); United States v. Harris, 197 F.3d 870, 876 (7th Cir. 1999). We have previously held that the level of protection afforded to this class is that of rational basis review. See Harris, 197 F.3d at 876. Under traditional equal protection analysis, it is a violation of the Fourteenth Amendment for the State to discriminate against disabled persons in an irrational manner or for an illegitimate reason. However, the Fourteenth Amendment allows the State to single out the disabled for different treatment so long as it has a rational or legitimate purpose. See Cleburne, 473 U.S. at 446-47. As with other characteristics that receive rational basis protection, a State may rely on disability "as a

proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests." Kimel, 120 S.Ct. at 646. "That [disability] proves to be an inaccurate proxy in any individual case is irrelevant." Id. Furthermore, it is presumed that distinctions made by the State that are based on disability are rational and legitimate. See id.; Cleburne, 473 U.S. at 441. The burden rests on the individual to demonstrate that the government's claimed purpose is illegitimate or that the means used to achieve that purpose are irrational. See Kimel, 120 S.Ct. at 646.

Under the ADA, disabled individuals receive substantially more protection than provided by the Fourteenth Amendment. State practices affecting the disabled do not receive the same presumption of legitimacy that they do under rational basis scrutiny. In many cases, once a qualified individual with a disability has demonstrated that the State took an adverse employment action against her because of her disability, the burden shifts to the State to show that it had a legitimate, non-discriminatory reason for the practice. See DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995) (applying a burden-shifting approach to an ADA claim); but see Pond v. Michelin N. Am., Inc., 183 F.3d 592, 597 n.5 (7th Cir. 1999) (noting that the burden-shifting approach only applies to claims for disparate treatment under the ADA and does not apply to claims for failure to reasonably accommodate). Furthermore, under the ADA it is no longer the case that any rational reason will support the State's action. The ADA imposes on the state a duty to accommodate disabled individuals and prohibits the State from denying any accommodation that is determined to be "reasonable" under the Act. See Vande Zande v. State of Wisc. Dep't of Admin., 44 F.3d 538, 541- 542 (7th Cir. 1995). As long as the disabled individual is able to perform the essential functions of the position in question, the State cannot choose for a legitimate policy reason to treat disabled employees differently from non-disabled employees. Moreover, while the Fourteenth Amendment allows the State to make broad generalizations about the disabled, the ADA "starts with a presumption in favor of requiring the employer to make an individualized determination." Kimel, 120 S.Ct. at 647; see Weigel, 122 F.3d at 466 (noting that "the ADA's 'qualified individual' inquiry . . . necessarily involves an individualized assessment of the individual and the relevant position").

As with the Age Discrimination in Employment Act ("ADEA") discussed in Kimel, the ADA shifts the burden in a disability discrimination case

from the individual to the State, raises the level of judicial scrutiny from rationality review to a heightened level of scrutiny, and disallows the approximations and generalizations that are permitted for classes that otherwise receive only rational basis protection. In sum, the ADA replaces the Fourteenth Amendment's constitutional protections with a higher set of legislative standards, thereby making illegal under the ADA conduct that is constitutional under the Fourteenth Amendment.

The fact that Congress prohibits some conduct that is constitutional under the Fourteenth Amendment does not end our discussion. We also examine the proportionality between the measures taken by Congress pursuant to its Section 5 powers and the unconstitutional conduct that is properly the target of that enforcement effort. See Kimel, 120 S.Ct. at 644; City of Boerne, 521 U.S. at 520. By proportionality we mean that "[t]he appropriateness of remedial measures must be considered in light of the evil presented. Strong measures appropriate to address one harm may be an unwarranted response to another, lesser one." City of Boerne, 521 U.S. at 530 (internal citations omitted). It is in this respect that this case differs from other cases recently decided by the Supreme Court in this area. Unlike with respect to its enactment of the ADEA, the Patent and Plant Variety Protection Remedy Clarification Act, or the Religious Freedom Restoration Act, Congress made extensive findings of discrimination against the disabled to support its passage of the ADA. Compare 42 U.S.C. sec. 12101, and Coolbaugh v. State of Louisiana, 136 F.3d 430, 436 (5th Cir. 1998) (noting the broad range of evidence upon which Congress made extensive findings of discrimination against the disabled in support of the passage of the ADA), with Kimel, 120 S.Ct. at 649 ("Congress never identified any pattern of age discrimination by the States"), Florida Prepaid, 119 S.Ct. at 2207 ("Congress identified no pattern of patent infringement by the States"), and City of Boerne, 521 U.S. at 530 ("RFRA's legislative record lacks examples of modern instances of generally applicable laws passed because of religious bigotry."). With the enactment of the ADA, Congress was not acting to remedy or prevent unsubstantiated harm but was attempting to address the documented injury of pervasive disability discrimination.

However, not all discrimination against a particular class is discrimination that is unconstitutional under the Fourteenth Amendment. As noted above, discrimination against groups that receive rational basis protection is only unconstitutional where that discrimination is arbitrary and unrelated to a legitimate

government purpose. In this case, the discrimination targeted by the ADA may well include such arbitrary and illegitimate distinctions concerning disabled persons. However, the ADA also undoubtedly prohibits much conduct that is permissible under the Fourteenth Amendment. See Vande Zande, 44 F.3d at 541(noting that the discrimination prohibited by the ADA is not only that which is arbitrary or irrelevant to legitimate considerations). The fact that the ADA targets some discrimination that is not a violation of the Fourteenth Amendment is reflected in the Congressional finding that "unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination." 42 U.S.C. sec. 12101(a)(4). Thus, while the ADA may remedy and prevent arbitrary and illegitimate discrimination against the disabled that is unconstitutional, it also sweeps in a wide area of conduct singling out the disabled that is not prohibited by the Fourteenth Amendment.

It is apparent that the broad sweep of the ADA is not "'adapted to the mischief and wrong which the [Fourteenth] [A]mendment was intended to provide against.'" City of Boerne, 521 U.S. at 532 (quoting Civil Rights Cases, 109 U.S. 3, 13 (1883)) (brackets in the original). As the Supreme Court has repeatedly noted, the Fourteenth Amendment is aimed at preventing discrimination by the States, as opposed to discrimination by private actors that may be addressed through Congress's Article I powers. See Kimel, 120 S.Ct. at 649; Florida Prepaid, 119 S.Ct. at 2207; City of Boerne, 521 U.S. at 530. In its passage of the ADA, Congress appears to have relied on significant findings of discrimination against the disabled throughout society. However, these findings do not reveal that the States themselves are discriminating against the disabled in an arbitrary or illegitimate fashion such that it is appropriate for the federal government to step in with federal legislation aimed at compelling compliance with the dictates of the Constitution./5 The lack of evidence that the States are pervasively discriminating against the disabled is compounded by the fact that virtually every State in the Union has promulgated state statutes prohibiting discrimination against the disabled in employment./6 Moreover, several States have explicit policies encouraging the employment of the disabled in state government positions./7 There is no evidence in the legislative record that the States are acting contrary to these policies or that those States

which do not have them are engaged in widespread discrimination against the disabled. It is only when the States themselves are engaged in conduct that violates the Fourteenth Amendment that Congress is authorized to step in under Section 5 to remedy and prevent those violations. See Kimel, 120 S.Ct. at 645; Florida Prepaid, 119 S.Ct. at 2211. We do not doubt that occasionally States falter in their efforts to eliminate discrimination in state employment. However, the broad sweeping federal legislative remedy that is the ADA is out of proportion to correcting the transgressions that do occur. Without more detailed findings concerning a nationwide pattern of arbitrary and illegitimate discrimination against the disabled by the States, the ADA cannot be viewed as a proportional and congruous response to the problem of state-perpetrated discrimination against the disabled. While the ADA's goal of eliminating discrimination against the disabled throughout society may be a laudable aim for federal legislation, it is not one which serves the purpose of enforcing the protections provided by the Fourteenth Amendment. See City of Boerne, 521 U.S. at 519 ("Congress does not enforce a constitutional right by changing what the right is. It has been given the power 'to enforce,' not the power to determine what constitutes a constitutional violation.").

In conclusion, we wish to emphasize the limited nature of our decision in this case as well as our decision in Erickson. We have only concluded that States are entitled to Eleventh Amendment immunity for suits brought by individuals under the ADA. The limitations on that immunity apply with equal force in this context. See, e.g., United States v. Mississippi, 380 U.S. 128, 140-141 (1965); Edelman v. Jordan, 415 U.S. 651 (1974); Ex Parte Young, 209 U.S. 123 (1908). Furthermore, our decisions do not address the validity of the ADA as an exercise of Congress's Commerce Clause power. Therefore, in all contexts other than that of an individual suing a State in federal court, the ADA retains its full force as a means of enforcing nationwide standards for non-discriminatory treatment of the disabled.

III.  CONCLUSION

Passage of the ADA was not a proper exercise of Congress's authority under Section 5 of the Fourteenth Amendment. Therefore, the ADA does not abrogate the States' Eleventh Amendment immunity, and IDOT, as a department of the State of Illinois, cannot be sued without its consent in federal court for a violation of the ADA. We conclude that the district court did not have subject matter jurisdiction to hear this case. We Vacate the district court's entry of judgment in

favor of the defendant and Dismiss this case for lack of subject matter jurisdiction.

/1 Suits against departments of state government are equivalent to suits against a State for purposes of Eleventh Amendment immunity analysis. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-101 (1983).

/2 Because we find that Illinois is immune from suit, we limit our discussion to that issue and do not discuss the merits of Stevens's claim. In addition, Congress's power to enact the ADA pursuant to the Commerce Clause is not an issue in this appeal and is not addressed by this opinion.

/3 We find no evidence in the record that IDOT consented to suit in federal court. The mere fact that the Illinois Attorney General appeared in federal court to represent the State's interests is not sufficient to constitute consent by the State to be sued in a federal forum. See Estate of Porter v. Illinois, 36 F.3d 684, 691 (7th Cir. 1994) (finding that the Attorney General of Illinois is not authorized to waive the State's Eleventh Amendment immunity).

/4 The Fourteenth Amendment provides:

Section 1.  . . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. . . .

Section 5.  The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

/5 The dissent in Erickson notes that Congress made findings concerning discrimination against the disabled in areas such as education, health care and transportation that are traditionally provided, at least in part, by state governments. Erickson, No. 98-3614, 2000 WL 307121, at *12. However, there is no indication that any discrimination found by Congress was arbitrary or irrational such that it would constitute a violation of the Fourteenth Amendment.
/6 See Ala. Code sec.21-7-8; Alaska Stat. sec.18.80.220; Ariz. Rev. Stat. sec. 41-1463; Ark. Code Ann. sec. 11-13-110; Cal. Gov't Code sec. 12940; Colo. Rev. Stat. sec. 24-34-402; Conn. Gen. Stat. sec. 46a-60; Del. Code Ann. tit. 19, sec. 724; Fla. Stat. ch. 760.10; Ga. Code

Ann. sec. 34-6A-4; Haw. Rev. Stat. sec. 378-2; Idaho Code sec. 67-5909; 775 Ill. Comp. Stat. 5/1-102; Ind. Code sec. 22-9-1-2; Iowa Code sec. 216.6; Kan. Stat. Ann. 44-1001; Ky. Rev. Stat. Ann. sec. 207.150; La. Rev. Stat. Ann. sec. 23:323; Me. Rev. Stat. Ann. tit. 5, sec. 4572; Md. Ann. Code art. 49B, sec. 16; Mass. Gen. Laws ch. 93, sec. 103; Mich. Comp. Laws sec. 37.1202; Minn. Stat. sec. 363.03; Miss. Code Ann. sec. 43-6-15; Mo. Rev. Stat. sec. 213.055; Mont. code Ann. sec. 49-4-101; Neb. Rev. Stat. sec. 48-1104; Nev. Rev. Stat. sec. 613.310; N.H. Rev. Stat. Ann. sec. 354-A:7; N.J. Stat. Ann. sec. 10:5-4.1; N.M. Stat. Ann. sec. 28-7-2; N.Y. Exec. Law sec. 296; N.C. Gen. Stat. sec. 168A-5; N.D. Cent. Code sec. 14-02.4-03; Ohio Rev. Code sec. 4112.02; Okla. Stat. Ann. tit. 25, sec. 1302; Or. Rev. Stat. sec. 659.436; 43 Pa. Cons. Stat. sec. 955; R.I. Gen. Laws sec. 28-5-7; S.C. Code Ann. sec. 1-13-80; S.D. Codified Laws sec. 20-13-10; Tenn. Code Ann. sec. 8-50-103; Tex. Lab. Code sec. 21.128; Utah Code Ann. sec. 34A-5-106; Vt. Stat. Ann. tit. 3, sec. 495; Va. Code Ann. sec. 51.5-41; Wash. Rev. Code sec. 49.60.180; W. Va. Code sec. 5-11-9; Wis. Stat. sec. 111.31; Wyo. Stat. Ann. sec. 27-9-105.

/7 See, e.g., Ala. Code sec.21-7-8; Alaska Stat. sec.39.25.150; Ariz. Rev. Stat. sec. 41-783; Ark. Code Ann. sec. 20-14-301; Colo. Rev. Stat. sec. 24-34-801; Conn. Gen. Stat. sec. 46a-70; Fla. Stat. ch. 413-08; Ga. Code Ann. sec. 30-1-2; Haw. Rev. Stat. sec. 347-20; Idaho Code sec. 56-707; 775 Ill. Comp. Stat. 30/5; Ind. Code sec. 16-32-3-5; Iowa Code sec. 19B.2; Kan. Stat. Ann. 39-1005; Me. Rev. Stat. Ann. tit. 17, sec. 1316; Md. Ann. Code art. 30, sec. 33; Minn. Stat. sec. 256C.01; Miss. Code Ann. sec. 43-6-15; Mo. Rev. Stat. sec. 209.180; Mont. code Ann. sec. 49-4-202; Neb. Rev. Stat. sec. 20-131; Nev. Rev. Stat. sec. 284.012; N.H. Rev. Stat. Ann. sec. 167-C:5; N.J. Stat. Ann. sec. 11A:7-3; N.M. Stat. Ann. sec. 28-7-7; N.C. Gen. Stat. sec. 128-15.3; N.D. Cent. Code sec. 25-13-05; Okla. Stat. Ann. tit. 74, sec. 840-2.9; R.I. Gen. Laws sec. 28-5.1-4; S.C. Code Ann. sec. 43-33-60; Tenn. Code Ann. sec. 71-4-202; Tex. Hum. Res. Code sec. 91.017; Utah Code Ann. sec. 26-30-3; Vt. Stat. Ann. tit. 21, sec. 309a; Va. Code Ann. sec. 51.5-41; Wash. Rev. Code sec. 70.84.080; Wis. Stat. sec. 230.01.