In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2659

JOSEPH M. CONLEY,

Plaintiff-Appellant,

v.

VILLAGE OF BEDFORD PARK,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 7183--Suzanne B. Conlon, Judge.

ARGUED JANUARY 14, 2000--DECIDED May 31, 2000

Before FLAUM, EASTERBROOK and RIPPLE,
Circuit Judges.

RIPPLE, Circuit Judge.  Joseph Conley
brought this action pursuant to the
Vocational Rehabilitation Act of 1973
(the "Rehabilitation Act"), 29 U.S.C.
sec. 701 et seq., and the Americans with
Disabilities Act of 1990 (the "ADA"), 42
U.S.C. sec. 12101 et seq. He claimed that
his employer, the Village of Bedford Park
(the "Village"), had discriminated
against him on the basis of his
disability; Mr. Conley is a recovering
alcoholic. The district court granted
summary judgment for the Village. For the
reasons set forth in the following
opinion, we affirm the judgment of the
district court.

I

BACKGROUND

A.  Facts/1
   Mr. Conley worked as a Maintenance
Worker for the Village of Bedford Park.
He was assigned to the Water Department
from October 1989, until his transfer to
the Department of Public Works in October
1997. For the first four and one-half

years of his employment, Mr. Conley was chronically tardy and absent from work without permission. In response, the Water Department imposed various forms of progressive discipline, including verbal warnings, written warnings, and, finally, suspension. Believing that alcoholism was the root of Mr. Conley's work problems, Water Department management requested that Mr. Conley submit to a substance abuse evaluation. As a result of that evaluation, Mr. Conley was required to attend an alcohol rehabilitation program in late February and early March of 1994.

As the completion of his program drew near, Mr. Conley contacted his supervisor, James Gifford. The exact nature of the conversations between Mr. Conley and Gifford are disputed. According to Mr. Conley, however, he contacted Gifford on March 1, 1994, and told Gifford that he (Mr. Conley) would be released from the program on March 3; Gifford responded: "Mike, I don't have time for this s_ _ t now. Call me when you get your paperwork," and hung up. R.7, Ex.3 at 63. On March 3, the day Mr. Conley was released, he called the Water Department at 4:15 p.m. and again asked for Gifford. Mr. Conley was told that Gifford had left for the day; Mr. Conley left a message.

At 9:00 a.m. the following day, Mr. Conley again called Gifford to obtain instructions for his return to work. Gifford told him that he should have called earlier or, at least, have reported for work at the usual start time; Gifford then told Mr. Conley that he would have to call Mr. Conley back. After speaking with the Village's attorney and others, Gifford returned Mr. Conley's call and told Mr. Conley that he should come to the Water Department later that day. When Mr. Conley arrived, he was informed by Gifford that he was being suspended for nine days without pay because he had failed to come directly to work after his treatment and because he had missed four days of his treatment. During the course of the meeting, Gifford also told Mr. Conley that he "would be relentless" toward Mr. Conley and that Mr. Conley "should probably find another job." Id. at 70.

Mr. Conley returned to work after his nine-day suspension. Although his

absenteeism and punctuality improved markedly, Mr. Conley's work performance declined in Gifford's eyes. Specifically, Mr. Conley failed to report pump problems to the central office on several occasions.

According to Mr. Conley, his diagnosis and treatment for alcoholism marked the beginning of various types of discrimination by the Village. For instance, after his return from treatment, Mr. Conley was assigned to paint the pump house for several months by himself. During this time, he was not allowed to drive department vehicles. These actions, according to Mr. Conley, made him feel isolated from other employees.

Mr. Conley also points to other examples of allegedly discriminatory actions that occurred after his treatment. Mr. Conley believes that the Village unjustifiably denied him opportunities to work overtime and, in August 1996, promoted a less senior maintenance worker instead of him.

The injustice Mr. Conley perceived as an employee in the Water Department led him to file a charge of discrimination with the Illinois Department of Human Rights on March 20, 1997, three years after his suspension. In his charge, Mr. Conley alleged that he had been subjected to "different terms and conditions" of employment since March of 1994. R.7, Ex.14. Specifically, he complained of three actions by the Water Department. First, Mr. Conley stated he had been given the "worst job assignments (mainly painting)" and that this made him feel "isolated from the other employees." Id. Second, Mr. Conley cited the Water Department's failure to offer him overtime "as recent as March 7, 1997," as further evidence of discrimination. Id. Finally, Mr. Conley charged that the Water Department failed to promote him to a higher class of maintenance worker around August 20, 1996. Mr. Conley attributed his poor treatment to his disability; he stated: "I believe I have been discriminated against because of my disability, in violation of the Americans With Disabilities Act of 1990, as amended, in that I was not treated badly until after I was diagnosed [with my] disability." Id. While his charge was pending, Mr. Conley requested, and was

granted, a transfer to the Department of Public Works.

B.   District Court Proceedings

After receiving his right-to-sue letter from the EEOC, Mr. Conley brought this action in the district court for violations of both the ADA and Rehabilitation Act. In his complaint, Mr. Conley averred that, after the disclosure of his alcoholism in March 1994, his supervisors no longer considered him "a competent or valued member of the agency, unjustifiably criticized his work, and pursued adverse personnel actions against [him], all because of his alcoholism condition." R.1, para.14. He also stated, as in his EEOC charge, that he "was denied promotion, given menial assignments below his former level, and otherwise mistreated." Id., para.15. Finally, Mr. Conley alleged that the Village, "through [its] management team, intentionally created a hostile work environment for [him] after his disclosure of his handicap, on account of his handicap." Id., para.17.

The Village denied the material allegations of the complaint. It also set forth an affirmative defense that Mr. Conley's complaint was outside the scope of the charge of discrimination because the charge did not name alcoholism specifically as Mr. Conley's disability. Shortly thereafter, the Village moved for summary judgment on the ground that Mr. Conley was not disabled within the meaning of the statutes. According to the Village, he was not disabled because he was, at all times, able "to sit, stand, lift, reach, hear, speak, breathe, learn, walk, work, [and] care for himself." R.5 at 11. Furthermore, it did not perceive Mr. Conley as disabled because he possessed all of the abilities listed above. The Village also took issue with Mr. Conley's claims that he had suffered adverse employment actions as a result of his alcoholism. The Village claimed that there was "no evidence that the Village of Bedford Park discriminated against Mr. Conley because he was an alcoholic." Id. at 12. Any failure to promote Mr. Conley, the Village argued, was based on job performance. As well, his assignments and opportunities for overtime had not changed since his treatment. Finally, the Village reiterated its affirmative

defense that the EEOC charge was deficient because it lacked specifics concerning Mr. Conley's disability. The Village maintained that this deficiency resulted in an absolute bar to Mr. Conley's claims because the date for filing a new charge had passed./2

Mr. Conley filed a response to the motion for summary judgment. In his response, Mr. Conley set forth examples of the ways that the Village had discriminated against him, namely, his suspension, his supervisor's statement that he would be "relentless" toward Mr. Conley, the lack of opportunities for him to work overtime, his job assignments, and the fact that he was not promoted. R.13 at 6-7. Mr. Conley also refuted the Village's argument that his claims were time-barred; he said the Village became aware of the nature of the alleged disability discrimination early in the EEOC's investigation.

The district court was persuaded by the Village's arguments and entered summary judgment on its behalf. In its opinion, the court first reiterated the elements of Mr. Conley's cause of action: "(1) he is a disabled person under the statute; (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation and (3) he has suffered an adverse employment action because of his disability." R.18 at 4 (citations omitted). Because Mr. Conley had produced evidence that "Bedford Park viewed his alcoholism as impairing his job performance," the court concluded that his alcoholism qualified as a disability. Id. at 5. The court then determined that "Conley has failed to carry his burden of proving that his alcoholism did not affect his job and that he was performing at the same standard as other employees." Id. at 6. In support of its statement, the district court pointed to Mr. Conley's acknowledgment of his less than stellar attendance record and of his admission that "his lack of promotion was the result of not performing on a par with other maintenance workers." Id. The court then addressed Mr. Conley's other allegations of discrimination, that he was not allowed to drive a Village vehicle and that he was assigned to paint the pump room for an extended period of time. It stated:

> Refusing Conley a city-owned vehicle in which to drive to work hardly constitutes discrimination when Conley had previously appeared for work with alcohol on his breath. See Gifford Dep. at 154-56. Conley's assignment to paint the pump room was a normal aspect of his job; other maintenance workers had been required to paint parts of the pump station. See Orlos Dep. at 12-13.

Id. at 6-7. Because Mr. Conley had failed to show that the Village discriminated against him on the basis of his alcoholism, the court entered judgment on behalf of the Village.

## II

## DISCUSSION

### A. Standard of Review

We review de novo the district court's grant of summary judgment to the defendants. See Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). In evaluating the district court's decision, we "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." Bellaver v. Quanex Corp., 200 F.3d 485, 491-92 (7th Cir. 2000). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the nonmoving party, here Mr. Conley, was required to set forth "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), and to produce more than a scintilla of evidence in support of his position, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In fact, Mr. Conley must have presented evidence from "which the jury could reasonably find for" him. Id. With these standards in mind, we turn to Mr. Conley's first claim./3

### B. Suspension

Mr. Conley first argues that the Village discriminated against him by suspending him for his failure to report for work on

time immediately following his treatment. In order to state a claim for discriminatory suspension, Mr. Conley must establish that he is disabled as defined under the ADA and that he suffered an adverse employment action as a result of his disability. See Silk, 194 F.3d at 798 n.6. The district court concluded, and the Village does not contest on appeal, that alcoholism is a disability as defined by the ADA. Furthermore, there is no dispute that a suspension constitutes an adverse employment action. See, e.g., id. at 800; Biolchini v. General Elec. Co., 167 F.3d 1151, 1154 (7th Cir. 1999) ("It is undisputed that Biolchini . . . suffered an adverse employment action in the form of a one week suspension . . . ."). We turn, therefore, to whether Mr. Conley has proffered some evidence of an illicit motive for the adverse action, that is, some causal link between his alcoholism and his suspension.

We have stated previously that a plaintiff may show a causal link in two ways: either by (1) putting forward "direct evidence of illegal motive linked to the challenged employment decision," or (2) establishing illegal motive indirectly through the three-step model of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Chambers v. American Trans Air, Inc., 17 F.3d 998, 1003 (7th Cir. 1994). Different kinds and combinations of evidence can demonstrate a discriminatory intent such as "suspicious timing, ambiguous statements, oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Troupe v. May Dep't Stores Co., 20 F.3d 734, 735 (7th Cir. 1994).

Here, if we accept Mr. Conley's version of events as true, there is evidence from which an inference of discriminatory intent might be drawn with respect to the suspension. Both during and after his release from treatment, Mr. Conley took steps to determine exactly what he must do to return to work. However, Gifford never responded to Mr. Conley's requests. When Mr. Conley finally reached Gifford on March 4, Gifford immediately chastised Mr. Conley for failing to show up for work at the usual hour and did not give

Mr. Conley further instructions at that time. Instead, Gifford summoned Mr. Conley for a meeting later that afternoon and informed him that he was suspended for nine days without pay because he had failed to report to work on time. Gifford also told Mr. Conley that he "would be relentless" toward Mr. Conley and that Mr. Conley "should probably find another job." R.7, Ex.3 at 70. The combination of Gifford's reluctance to give Mr. Conley instructions for his return to work, of the timing of the suspension--occurring the day Mr. Conley returned to work after his treatment--and of Gifford's statements during the suspension meeting, is sufficient evidence from which a jury could find that Mr. Conley's alcoholism resulted in his suspension./4

Nevertheless, we may affirm a grant of summary judgment "'on a ground other than that relied upon by the district court below, so long as the alternative basis finds adequate support in the record.'" E.E.O.C. v. North Knox Sch. Corp., 154 F.3d 744, 746 (7th Cir. 1998) (quoting Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996)). The suspension was a discrete act resulting in a discrete injury to Mr. Conley. He was not permitted to work for nine days and lost his income for those nine days. However, even given Mr. Conley's obvious loss, he failed to file a charge with the EEOC, or equivalent state agency, within the requisite 300-day time period. Consequently, any claim based on the suspension alone is untimely.

Moreover, even if timeliness were not a bar, Mr. Conley failed to raise the allegedly discriminatory suspension either in his EEOC charge or in his complaint; the suspension was mentioned for the first time in Mr. Conley's response to the Village's motion for summary judgment. "A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996) (citing Harper v. Godfrey Co., 45 F.3d 143, 147-48 (7th Cir. 1995)). To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge, we must look at whether the allegations are "'like or reasonably related to'" those

contained in the charge. Id. (quoting Harper, 45 F.3d at 148).

We do not believe that the allegations of discriminatory suspension contained in the response to the motion for summary judgment are "like or reasonably related to" those actions contained in the EEOC charge. The EEOC charge sets forth other alleged discriminatory employment actions--unpleasant job assignments, lack of overtime and failure to promote; it does not mention the suspension. The suspension is a discrete action, taken at a definite time, in response to Mr. Conley's alleged failure to report for work in a timely manner. Although all of these actions implicate conduct by Gifford, they are not related in any other way. "Not having raised the claim or even its seeds before the EEOC, [Conley] was not entitled to bring it in [his] action." Id. at 203. Consequently, we conclude that the district court did not err in granting summary judgment to the Village on the suspension claim./5

C.  Failure to Promote

Mr. Conley also maintains that the Village discriminated against him on the basis of his disability because it promoted a less senior maintenance worker, and passed him over for promotion. The district court held that Mr. Conley admitted that "his lack of promotion was the result of not performing on par with other maintenance workers." R.18 at 6. We agree.

To survive summary judgment, Mr. Conley had to come forward with indirect or direct evidence to link his lack of promotion with his disability. The indirect method requires a plaintiff to demonstrate that (1) he was disabled within the meaning of the ADA; (2) he applied for and was qualified for the position sought; (3) he was rejected for the position; and (4) those who were promoted had similar or lesser qualifications for the job. See Ghosh v. Indiana Dep't of Envtl. Mgmt., 192 F.3d 1087, 1091 (7th Cir. 1999) (setting forth elements for a failure to promote claim under Title VII). Mr. Conley has failed to come forth with any evidence of his qualifications for this position. At the same time, he appears to admit that Paul Miraldi, the maintenance worker who was

promoted, was qualified for the job. See R.14 at 3./6

Furthermore, Mr. Conley has not come forward with any direct evidence of discrimination with respect to this claim. Although Gifford's alleged statement that he would be "relentless" toward Mr. Conley may be sufficient to establish a link between Mr. Conley's suspension and his condition as an alcoholic, it is not sufficient to link Mr. Conley's lack of promotion with his disability. "To rise to the level of direct evidence of discrimination, this Court has stated that 'isolated comments must be contemporaneous with the [adverse action] or causally related to the[applicable] decision-making process.'" Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723 (quoting Geier v. Medtronic Inc., 99 F.3d 238, 242 (7th Cir. 1996)), cert. denied, 525 U.S. 870 (1998). However, Gifford's statements were made in March 1994, more than two years before the allegedly discriminatory failure to promote occurred; these statements are too distant temporally to provide support for Mr. Conley's promotion claim. Here again, Mr. Conley's admissions help defeat his claims. Mr. Conley admitted that "Gifford never denied [him] a promotion because he was an alcoholic." R.6 at 7; R.14 at 3. Consequently, because Gifford's statement was not contemporaneous with the promotion decision, and because Mr. Conley admitted that his alcoholism was not a motivating factor in Gifford's decision-making process, the district court properly entered summary judgment for the Village with respect to this claim.

D.  Lack of Overtime

Mr. Conley argues that the district court erred in granting summary judgment to the Village on his overtime claim. Mr. Conley fails to come forward with any evidence to substantiate his allegations. He does not set forth any specific times that the Village gave others overtime opportunities, but denied the same to him. As well, he does not proffer any evidence to show that, on par, he did not receive the same number of overtime opportunities as others. Mr. Conley merely makes the unsupported allegation that he was denied overtime on the basis

of his alcoholism. Such a statement is wholly inadequate to make out a prima facie case of discrimination. See Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1057 (7th Cir. 1994) ("'Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.'" (quoting McDonnell v. Cournia, 990 F.2d 963, 969 (7th Cir. 1993))). Consequently, summary judgment for the Village was appropriate.

## E. Painting/Driving the Village Truck

Mr. Conley also maintains that the Village furthered its course of discrimination by requiring him to paint the pump room for an extended period of time and by denying him use of a Village vehicle. We do not believe that these actions, standing alone, rise to the level of an ADA violation.

"While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). "[A] materially adverse change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities[.]" Johnson v. City of Fort Wayne, 91 F.3d 922, 932 (7th Cir. 1996). In this case, Mr. Conley complains of being assigned to paint the pump room for several months and attributes the motivation for this assignment to his alcoholism because other workers were not assigned to paint for such a long period of time. However, the record belies Mr. Conley's assertions. Mr. Orlos, also a maintenance worker, stated that he had spent "a whole summer painting fire hydrants" and had spent a year painting one pump room. R.14, Ex.2 at 13. Furthermore, Mr. Conley admitted in his deposition that, prior to his treatment, when there was painting to be done, it was assigned to him. See R.7, Ex.3 at 86. Mr. Conley has not shown that his assignment to paint the pump room was more than "a mere inconvenience or an alteration in job responsibilities"; indeed, the assignment seems to be well within the scope of normal activities for a Village maintenance worker. Consequently, Mr. Conley's painting assignment did not constitute an adverse action under the ADA.

Mr. Conley also suggests that denying him the use of a Village vehicle isolated him from his co-workers and, therefore, violated the ADA. We cannot agree. According to the record, Mr. Conley was denied the use of a Village vehicle while painting the pump room. The Village's reason for its action was that the vehicles were needed for those who would be answering emergency calls. Mr. Conley does not dispute this rationale. Furthermore, Mr. Conley does not explain how failing to give him a vehicle prevented him from carrying out his duties or isolated him from his co-employees. Consequently, we cannot say that denying Mr. Conley use of a vehicle, of itself, violated the ADA./7

F.  Hostile Work Environment

Finally, Mr. Conley rather obliquely argues that, although any one of these actions might not violate the ADA, the sum total of actions by the Village rises to the level of a statutory violation. In essence, Mr. Conley claims that the Village created a hostile work environment for him as a result of his disability, see R.1, para.17, although he never uses those terms in his appellate brief.

This court has not yet resolved the issue whether the ADA encompasses a cause of action for hostile work environment. "Thus far, we have assumed the existence of such claims, without expressly deciding whether they are proper, because resolution of that issue has not been necessary." Vollmert v. Wisconsin Dep't of Transp., 197 F.3d 293, 297 (7th Cir. 1999); see also Silk, 194 F.3d at 803-04. We have followed this course because the actions alleged in the cases before us have not been "significant enough to rise to the level of a hostile environment were that type of claim available." Vollmert, 197 F.3d at 297. This case is no different.

In order for harassment to approach the level of a hostile work environment, it must be "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (citations and quotation marks omitted).

Here the actions allegedly taken against Mr. Conley are neither severe nor pervasive and certainly cannot be characterized as "abusive."

Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

/1 Because the district court granted summary judgment to the Village, we take the facts alleged by Mr. Conley to be true. See Adusumilli v. City of Chicago, 164 F.3d 353, 357 (7th Cir. 1998) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)), cert. denied, 120 S. Ct. 450 (1999).

/2 The Village filed its motion for summary judgment on April 15, 1999, more than 300 days after the last act of discrimination allegedly took place.

/3 In Erickson v. Board of Governors of State Colleges and Universities, 207 F.3d 945 (7th Cir. 2000), and Stevens v. Illinois Department of Transportation, No. 98-3350, 2000 WL 365947 (7th Cir. Apr. 11, 2000), we applied the framework of Kimel v. Florida Board of Regents, 120 S. Ct. 631 (2000), to an ADA case. In Erickson, the court held that the ADA did not "'enforce' the Fourteenth Amendment," and therefore, like the Age Discrimination in Employment Act, did not validly abrogate Eleventh Amendment immunity. 207 F.3d at 252. The Eleventh Amendment, however, applies only to the states, and not to municipalities. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." (citations omitted)). It is clear that, under the Illinois Municipal Code, the Village of Bedford Park is considered a municipality, and not an arm of the state. See 65 Ill. Comp. Stat. Ann. 5/1-1-2(1) (West 1996) ("'Municipal' or 'municipality' means city, village, or incorporated town in the State of Illinois, . . . ."). Consequently, the Village may be sued in federal court for alleged violations of the ADA.

/4 We note that the Village disputes that Gifford ever made these statements. However, summary judgment is not the appropriate stage to resolve issues of fact.

/5 Similarly, Mr. Conley's Rehabilitation Act claims are untimely. We previously have held that Illinois' two-year statute of limitations for personal

injury actions applies to actions brought under the Rehabilitation Act. See Cheeney v. Highland Community College, 15 F.3d 79, 81-82 (7th Cir. 1994). Because Mr. Conley's complaint was filed on November 10, 1998, more than four years after the allegedly discriminatory suspension took place, his suspension claim cannot be sustained under the Rehabilitation Act either.

/6 In the Village's 12M(3) Statement, setting forth facts to which there was not a genuine issue, the Village stated:

38. Paul Miraldi was promoted to Maintenance Worker II based on his job performance even though he had less seniority than Mr. Conley. (Transcript of the Deposition of James Gifford, page 148, lines 7-10, Exhibit 2).

R.6 at 7. Mr. Conley admitted that this assertion was true. See R.14 at 3.

/7 Because we hold that the Village's denial of the use of a vehicle was unrelated to Mr. Conley's disability, we do not reach the issue whether the Village might otherwise be justified in denying the use of a public vehicle to a recovering alcoholic without violating the ADA.