**Jimmy CROWLEY, Plaintiff–Appellant,**

v.

**ROCKFORD HOUSING AUTHORITY, Defendant–Appellee.**

No. 00–2386.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 12, 2000.

Decided Jan. 3, 2001.

Before Hon. BAUER, Hon. POSNER, and Hon. KANNE, Circuit Judges.

ORDER

In 1996 the Rockford Housing Authority promoted a white employee to a vacant supervisory position in its construction department. Notice of the vacancy hadn't been posted, and Jimmy Crowley, a carpenter at RHA since 1979, suspects the reason is because RHA knew he wanted

the job but didn't want a black applicant. Crowley filed an administrative charge of discrimination and followed with this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court granted summary judgment for RHA, and we affirm.

RHA created a construction department in 1994. Before that time the maintenance department had been responsible for building construction as well as the upkeep of RHA properties. With the change, maintenance supervisor Joe Fiorenza was reassigned to the construction department as its first "Construction Supervisor," a management post exempt from collective bargaining. Fiorenza reported to the director of the new department and supervised all of the department's employees, including Crowley and painter Chuck Doyle. But in June 1996 the director of the construction department left RHA, and Fiorenza was tapped to take his place, first in an acting capacity and then permanently in October. With the promotion came an instruction from RHA's executive director that Fiorenza fill his old job with someone in the department with whom he shared a good relationship. Fiorenza pronounced Doyle his acting Construction Supervisor in July 1996 and made the selection permanent on October 1. A "key requirement" of the position, Fiorenza would later explain, is an ability to supervise the department's employees, and so he elevated someone he thought "had a good working relationship with all of the other trade employees in the construction department and would be able to supervise them." Race, he added, was not a basis for choosing Doyle.

 If this was the sum of Crowley's evidence, then summary judgment was inevitable; Title VII neither compels employers to advertise vacancies nor forbids them from singling out employees for un-

solicited promotion. *See Loyd v. Phillips Bros., Inc.,* 25 F.3d 518 (7th Cir.1994); *Box v. A & P Tea Co.,* 772 F.2d 1372, 1376–77 (7th Cir.1985). Crowley, though, insists he presented additional evidence establishing that he was better qualified, and that RHA sidestepped a policy of posting open positions after learning he aspired to be the Construction Supervisor. This other evidence, Crowley says, raises the inference that RHA did not want a black employee challenging Doyle for the promotion, and so was enough to get his Title VII claim before a jury under either the direct or indirect method of proving discrimination. *See Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1169 (7th Cir.1998); *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1397 (7th Cir.1997).

Crowley's theory here is the same one addressed by the district court, but it seems to us different than what he claimed before RHA moved for summary judgment. What Crowley alleged in his administrative charge and repeated in his first and only complaint is that he was kept from vying for a "Maintenance Coordinator" vacancy, not that he was frozen out of contention for the Construction Supervisor job. RHA and the district court downplayed the discrepancy and presumed that Crowley was just confused about the job titles, in effect allowing him to constructively amend his complaint though the summary judgment papers. *See Whitaker v. T.J. Snow Co.,* 151 F.3d 661, 663 (7th Cir.1998). During discovery, though, Crowley named another employee as the person who had previously held the job he wanted, not Fiorenza. Yet, Crowley surely knew that Fiorenza was the former Construction Supervisor because in that role Fiorenza had directly managed him for almost two years. A more plausible inference, then, is that Crowley's discrimination claim in fact related to a different,

maintenance job and was refocused on the Construction Supervisor position after he filed suit. That raises a question about the scope of Crowley's underlying charge of discrimination and whether the claim now before us was exhausted, *see, e.g., Conley v. Village of Bedford Park,* 215 F.3d 703, 710 (7th Cir.2000), but RHA said nothing about exhaustion in the district court and since it's not jurisdictional the point is waived, *Gibson v. West,* 201 F.3d 990, 994 (7th Cir.2000).

The post-filing revision, however, does underscore the weakness in Crowley's evidence that he put RHA on notice that he wanted the Construction Supervisor job and not some other promotion. Crowley's principal assertion here is that a union official–who was not employed by RHA– spoke to the personnel manager about Crowley's interest in becoming the Construction Supervisor and reported back that the job was set to be posted the following week. But the union official and the personnel manager both deny any such conversation, so Crowley's only evidence on the subject is his own testimony. All he says is that he spoke with the union official in late August, after Doyle had already been promoted on an acting basis, and it's not even clear from his deposition testimony what exactly Crowley said to the union official in identifying the job he wanted. Regardless, Crowley makes little headway with this testimony because RHA's decision whether to post presumably was made, not in late August, but in July before Fiorenza offered the promotion to Doyle. And even weaker is Crowley's assertion that the union official went straight to the top and told RHA's executive director that Cowley wanted the job; the executive director made it plain that indeed the union official asked him about the Construction Supervisor job and any other management opening at RHA, not on behalf of Crowley but because the

union official wanted employment for *himself.* So in the end Crowley's only real evidence that RHA knew of his wish to be promoted is deposition testimony from co-worker Frank Hempstead, who says he told Fiorenza directly that Crowley was "going to put in for" a vacant position and received Fiorenza's response that he "might consider it." The job Hempstead recalled talking about, however, was–as Crowley alleged in his charge of discrimination and complaint–that of "Maintenance Coordinator," not the Construction Supervisor opening.

Crowley doesn't acknowledge the variance, but instead just presumes that Hempstead adequately notified Fiorenza that Crowley really wanted the Construction Supervisor job by whatever name. Crowley's presumption, while crucial to his premise that RHA avoided posting the vacancy only because it knew of his interest, also highlights a significant flaw in his theory of the case. Crowley doesn't tell us why not seeing a posting on the office bulletin board kept him from applying for the Construction Supervisor job. The position, after all, wasn't new; it had been occupied by Crowley's boss for almost two years, and when Fiorenza moved up Crowley knew instantly that Fiorenza's old job was open. Indeed, Crowley necessarily concedes that the lack of a posting was irrelevant to his knowledge about the job; his theory is that asking about it prompted the decision not to post. And since Crowley knew about the job, we do not understand–and at oral argument his counsel could not say–how the absence of a formal posting stopped Crowley from going directly to Fiorenza and asking if he could have the job, much like Hempstead apparently did on his behalf. Crowley has not pointed us to evidence that RHA made posting a precondition to applying, nor does he tell us that when he asked around

about the vacancy he was told his only option was to sit tight and wait for a posting that never came. Instead, the record, when construed favorably to Crowley, establishes that he never followed up with the personnel manager after the promised posting did not materialize, and that he never applied to Fiorenza even though Fiorenza voiced a willingness to consider him for the job when Hempstead mentioned that Crowley was "going to put in for" it.

But sound or not, Crowley's theory ultimately depends upon an inference that racial animus led RHA to ignore a policy of posting all exempt jobs; that inference, in turn, could never arise without evidence that RHA actually had such a policy. The district court discerned no such evidence, nor do we. RHA did admit that agency policy requires posting all bargaining unit jobs; its union contracts require as much. But RHA denied having a similar policy for exempt positions, and both the executive director and his assistant testified that RHA has no custom or practice of posting exempt jobs, though on occasion it will. Crowley offered nothing to the contrary, instead relying on his own belief that RHA, which employs 125 to 140 people, "always posted every job, whether it's union or non-union." Crowley's assertion is belied by his acceptance during this lawsuit of Fiorenza's offer to promote him to Carpenter Foreman, a job that was not posted. Moreover, Crowley has no personal knowledge about the full range of RHA's hiring, and his unsubstantiated belief about agency policy is not evidence that can forestall summary judgment. *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 573–74 (7th Cir.1998); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994). The same can be said about the generalized beliefs Crowley solicited from other RHA employees. And though Crowley makes much of his ability to identify one exempt management position that RHA posted, the other nineteen top-level jobs, including six held by blacks, were not. In short, Crowley had no proof of a policy or even a general practice of posting exempt positions like that awarded to Doyle.

AFFIRMED.