In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3764

Hershel R. Stanley,

Plaintiff-Appellant,

v.

Jon E. Litscher, Secretary, Wisconsin Department
of Corrections, et al.,

Defendants-Appellees.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99-C-533-S--John C. Shabaz, Chief Judge.


Submitted March 15, 2000--Decided May 16, 2000


   Before Bauer, Easterbrook, and Ripple, Circuit Judges.

   Easterbrook, Circuit Judge.  Hershel Stanley, an
inmate in Wisconsin's prison system, wants to
participate in a program for sex offenders,
believing that successful completion will give
him a boost when seeking parole or work release
and reduce the chance that he will be civilly
committed at the end of his criminal sentence.
See Wis. Stat. sec.sec. 980.01 to 980.13. Stanley
contends that, by rejecting his application to
participate in the program, defendants (officials
of Wisconsin's Department of Corrections)
violated the Americans with Disabilities Act, the
Rehabilitation Act, and multiple parts of the
Constitution. The district judge dismissed the
complaint under 28 U.S.C. sec.1915A(b)(1) for
failure to state a claim on which relief may be
granted; as a result, the defendants have not
been served with process and have not
participated in this appeal.

   Stanley alleges--and we must take his word for
it, because all we have to go on are the
complaint, its attachments, and his appellate
brief--that prison officials deem him ineligible
for intra-prison programs designed for sex
offenders, drug abusers, and the like, because he
is a psychopath. A psychologist's report relates:

The results of the evaluation support a

diagnosis of psychopathy. Consequently, Mr. Stanley is not appropriate for treatment or programs offered by DOC. Research demonstrates that traditional treatment or programs do not benefit individuals with psychopathy. In some cases, such interventions have been demonstrated to be contraindicated.

Stanley does not disagree with the assessment that he displays the characteristics of psychopathy, a word mental-health professionals apply to a personality disorder manifested in aggressive, perverted, criminal, or amoral behavior. Rather, he contends that federal statutes and the Constitution require prisons to admit psychopaths to their programs.

As a constitutional claim, this goes nowhere. It is far from clear that psychopathy is a mental disease or disability of any kind, as opposed to a complex of traits associated with antisocial conduct. But let us assume (given the posture of the suit) that psychopathy is a disability rather than just a description of lawlessness. Distinctions on the ground of disability are proper as long as they are rational. Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439–42 (1985); Heller v. Doe, 509 U.S. 312, 319-21 (1993); United States v. Harris, 197 F.3d 870, 873-76 (7th Cir. 1999). A state rationally could conclude that psychopaths do not benefit from intra-prison programs, that they spoil the programs for less aggressive inmates, or both. What is more, admission to the programs cannot be described as a liberty or property interest. No fixed set of criteria entitles anyone to admission, and exclusion leaves the prisoner with the normal attributes of confinement. Sandin v. Conner, 515 U.S. 472 (1995); Meachum v. Fano, 427 U.S. 215 (1976); Wallace v. Robinson, 940 F.2d 243 (7th Cir. 1991) (en banc); Higgason v. Farley, 83 F.3d 807 (7th Cir. 1996).

Stanley errs in thinking that the eighth amendment requires the state to "treat" his psychopathy more aggressively--if that condition is treatable in any way other than penal confinement. Papers attached to his complaint show that he saw a psychiatrist, who concluded on May 17, 1999, that he does not require "acute treatment." It is difficult, at all events, to conceive of psychopathy as a "serious medical need" within the scope of Estelle v. Gamble, 429 U.S. 97 (1976). Psychopaths are dangerous to others, not to themselves. Equally unavailing is Stanley's invocation of the Ex Post Facto Clause. Stanley does not point to any state law or policy, adopted after his crimes, that increases the authorized punishment.

Invoking the due process clause and the first amendment, Stanley contends that prison officials retaliated against him for complaining about his non-admission to the intra-prison programs. The alleged retaliation took the form of transfer to an out-of-state prison, which by itself violates none of Stanley's rights. Olim v. Wakinekona, 461 U.S. 238 (1983); Pischke v. Litscher, 178 F.3d 497 (7th Cir. 1999). Retaliation is a potential wrong, however, even when a transfer does not involve a liberty or property interest. See Haymes v. Montanye, 547 F.2d 188 (2d Cir. 1976). But on this subject Stanley pleaded himself out of court, for his filings show that the supposedly retaliatory event preceded the grievances that Stanley filed. Time's arrow means that this sequence cannot have been retaliatory. (Stanley does not contend that prison administrators saw a grievance coming and shipped him out of state to prevent its filing. Actually, it is not clear from his complaint whether a transfer was completed, as opposed to recommended.) Lumping all of defendants' acts together, adding the word "conspiracy," and citing 42 U.S.C. sec.1985 adds nothing. Ryan v. Mary Immaculate Queen Center, 188 F.3d 857 (7th Cir. 1999).

This leaves for discussion only Stanley's arguments under the ADA and the Rehabilitation Act. The Supreme Court has held that the ADA applies to prisons, see Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206 (1998), and its reasoning is equally applicable to the Rehabilitation Act. But given Erickson v. Board of Governors for Northeastern Illinois University, 207 F.3d 945 (7th Cir. 2000), and Stevens v. Illinois Department of Transportation, No. 98-3550 (7th Cir. Apr. 11, 2000), Stanley must raise his claims under the ADA in state court. Erickson and Stevens hold that sec.5 of the fourteenth amendment does not provide Congress with authority to enact the ADA. Because it rests on the Commerce Clause rather than sec.5, the eleventh amendment precludes private litigation against the state in federal court. Seminole Tribe v. Florida, 517 U.S. 44 (1996). Walker v. Snyder, No. 98-3308 (7th Cir. May 16, 2000), added that suits under Title II of the ADA (as this is) proceed against the public entity-- either in its own name, or through suits against its officers in their official capacities.

Stanley's claims differ from Walker's in two respects. First, unlike Walker, Stanley does not seek an accommodation of his condition but wants the state to disregard it when deciding who may participate in programs. Second, Stanley has raised a claim under the Rehabilitation Act. The

first difference is potentially important, given the emphasis Erickson placed on the accommodation requirements in Title I of the ADA. But Erickson, Stevens, and Walker, following Kimel v. Florida Board of Regents, 120 S. Ct. 631 (2000), also observe that the ADA exceeds the sec.5 power to the extent it forbids states to consider aspects of disability that are rationally related to legitimate objectives of government. That was what Kimel held for the traditional anti-discrimination provisions of the Age Discrimination in Employment Act, and as we concluded in Erickson and Stevens that reasoning is no less applicable to the ADA. Because we have already held that Wisconsin did not act irrationally in excluding psychopaths from programs within its prisons and therefore did not violate the Constitution, it follows that it is the Commerce Clause, rather than sec.5, that provides the basis of the rules Stanley seeks to invoke.

As for the Rehabilitation Act, 29 U.S.C. sec.794: we agree with Kilcullen v. New York State Department of Labor, 205 F.3d 77, 79-80 (2d Cir. 2000), and Garrett v. University of Alabama, 193 F.3d 1214, 1218 (11th Cir. 1999), cert. granted on a different issue, No. 99-1240 (Apr. 17, 2000), that the ADA and the Rehabilitation Act are identical for purposes of sec.5. But the Rehabilitation Act also is a condition on the receipt of federal funds, and legislation under the spending power is not affected by Kimel. See Oak Park Board of Education v. Kelly E., 207 F.3d 931, 935 (7th Cir. 2000). The Rehabilitation Act is no different in this respect from the IDEA, which Oak Park held adequate to support litigation against states in federal court. Accord, Little Rock School District v. Mauney, 183 F.3d 816, 831-32 (8th Cir. 1999). We therefore agree with the fourth, ninth, and eleventh circuits that the Rehabilitation Act is enforceable in federal court against recipients of federal largess. Litman v. George Mason University, 186 F.3d 544, 553 (4th Cir. 1999); Clark v. California, 123 F.3d 1267, 1271 (7th Cir. 1997); Sandoval v. Hagan, 197 F.3d 484, 493-94 (11th Cir. 1999). The only contrary decision, Bradley v. Arkansas Department of Education, 189 F.3d 745 (8th Cir. 1999), has been vacated and reheard en banc under the name Jim C. v. Arkansas Department of Education, 197 F.3d 958 (argued Jan. 14, 2000), and appears to be based on a misreading of the Rehabilitation Act's coverage.

Stanley's major hurdle on the merits under the Rehabilitation Act is demonstrating that he is an "individual with a disability" as that term is defined in 29 U.S.C. sec.706(8), a definition different from the one in the ADA. Section

706(8)(F) excludes from the protected class persons who suffer from "sexual behavior disorders" or compulsive criminality, yet Stanley's claims arise from those behavioral characteristics. He wants admission to programs that he believes would help him overcome his sexual behavior disorder and his persistently antisocial behavior, but these very disorders preclude him from obtaining benefits under the Rehabilitation Act.

The judgment of the district court is affirmed, except to the extent that court addressed on the merits Stanley's claims under the ADA. The judgment is vacated in part, and the case is remanded with instructions to dismiss for want of jurisdiction the claims under that statute.