[NOT FOR PUBLICATION-NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

No. 99-1621

BARBARA A. BARTOLOMEO AND JOHN R. BARTOLOMEO,

Plaintiffs, Appellants,

v.

PLYMOUTH COUNTY HOUSE OF CORRECTIONS, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lipez, Circuit Judge.

Barbara A. Bartolomeo and John R. Bartolomeo on brief pro se.
Joseph E. Kelleher and Kraus & Hummel LLP on brief for appellees.

August 16, 2000

**Per Curiam**.  Between January and December 1998, John Bartolomeo was confined at the Plymouth County Correctional Facility (PCCF) in Massachusetts.  He received regular visits there from his parents, Barbara and Charles Bartolomeo, in a first-floor visiting area.  On one occasion in June 1998, however, Barbara was unable to visit him because of an unusual set of circumstances: John had been placed in administrative segregation due to pending disciplinary charges and, by rule, could only receive visitors in a second-floor visiting area; Barbara allegedly suffered from a malady that prevented her from using the elevator; and PCCF officials refused to allow use of a connecting stairway because of security concerns.

Mother and son responded with the instant pro se action for injunctive relief and damages.  As here relevant, Barbara alleged a violation of her rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-34, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794, while John claimed an equal protection violation.  The district court, taking note of John's intervening transfer to another facility, dismissed all

requests for injunctive relief without prejudice on the ground of mootness; that ruling has not been challenged on appeal. As to the requests for damages, the court ended up granting summary judgment for defendants--rejecting John's claim on the merits and jettisoning Barbara's claims on qualified immunity grounds. This appeal followed.

We shall assume arguendo that Barbara's appeal is properly before us. A jurisdictional issue arises because, in a joint request, both plaintiffs moved under Fed. R. App. P. 4(a)(5) for an extension of time to appeal, and the district court allowed John's request only. The most likely basis for treating the two differently appears to be that John had signed the motion while Barbara had not. Under Fed. R. Civ. P. 11(a), "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Here, the omission of Barbara's signature was not called to her attention, and she was appearing pro se. In these circumstances, we are disinclined to dispose of her appeal on jurisdictional grounds.

On the merits, however, the arguments advanced on appeal by both plaintiffs prove clearly unavailing. Barbara's principal contention is that the district court

-3-

erred in rejecting her claims on qualified immunity grounds. As neither side has disputed the point, we shall assume without deciding that individuals may be subject to personal liability under Title II of the ADA and the Rehabilitation Act. But see, e.g., Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc), cert. dismissed, 120 S. Ct. 1265 (2000).[1]  Even if so, we agree with the district court that, under the circumstances with which the defendants were confronted, a reasonable official would not have understood that the actions taken violated a clearly established right. See, e.g., Bilida v. McCleod, 211 F.3d 166, 174 (1st Cir. 2000) (delineating qualified immunity test).[2]

---

[1]  Neither below, in their untimely motion for reconsideration, nor on appeal have plaintiffs pursued their claims against the institutional defendants (or against the personal defendants in their official capacities).  Being willing to afford only so much latitude to pro se litigants, we consider the claims abandoned.  We add, without deciding the point, that their prospects of ultimately recovering damages appeared unpromising.  See, e.g., Powers v. MJB Acquis. Corp., 184 F.3d 1147, 1153 (10th Cir. 1999) (requiring showing of intentional discrimination in the form of "deliberate indifference" in order to obtain damages in this context).

[2]  While various courts have applied qualified immunity in the ADA context, see, e.g., Bartell v. Lohiser, 215 F.3d 550, ___, 2000 WL 726482, at *10 n.1 (6th Cir. 2000); Gorman v. Bartch, 152 F.3d 907, 914-16 (8th Cir. 1998), one has briefly mused about the propriety of doing so, see Walker, 213 F.3d at 346.  As plaintiffs have raised no such objection, we do not address the matter.

To be sure, just seventeen days before the events in question here, the Supreme Court concluded that Title II of the ADA applied in the prison context. See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998). Courts have reached the same conclusion concerning the Rehabilitation Act. See, e.g., Stanley v. Litscher, 213 F.3d 340, 343 (7th Cir. 2000). And defendants have not disputed that prison visitation policies constitute "services, programs, or activities" within the meaning of 42 U.S.C. § 12132. See, e.g., Crawford v. Indiana Dep't of Corrections, 115 F.3d 481, 483-84 (7th Cir. 1997) (noting concession by state on that point); Niece v. Fitzner, 922 F. Supp. 1208, 1217 (E.D. Mich. 1996).

Nonetheless, the incident in question was an isolated one, arising out of an apparent misunderstanding, and resulting in just a single failed visit out of many successful ones. It does not appear that Barbara was deprived of "meaningful access" to the visitation program. Theriault v. Flynn, 162 F.3d 46, 48 (1st Cir. 1998) (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985)); cf., e.g., Spurlock v. Simmons, 88 F. Supp. 2d 1189, 1195-96 (D. Kan. 2000) (holding that restricting hearing-impaired inmate to two thirty-minute calls per week on special telephone

-5-

amounted to meaningful access).  The provision of elevator service ordinarily avoids rather than creates problems of physical access.  Barbara, it is true, had furnished defendants with a physician's note explaining that her anxiety disorder and claustrophobia rendered her "particularly ... unable to tolerate riding in elevators." Yet defendants' initial belief--that this meant simply that assistance would be required (they offered the use of a wheelchair)--was not an indefensible one.  And once that misimpression was dispelled, their refusal to make a special, on-the-spot accommodation was not unreasonable-- especially with a throng of visitors milling about and with Barbara (as she concedes) becoming increasingly obstreperous.  For these reasons, we conclude that qualified immunity was properly invoked.[3]

Plaintiffs' remaining arguments require little comment.  John's equal protection claim can be summarily rejected for the reason that he was not similarly situated to his fellow inmates (all of whose visitors, it can be

---

[3]  From a broader standpoint, we also note that, in the wake of Yeskey, the manner in which the ADA is to be applied in the prison context and the appropriate level of judicial scrutiny are matters that remain unsettled.  See, e.g., Onishea v. Hopper, 171 F.3d 1289, 1299-1301 (11th Cir. 1999) (en banc), cert. denied, 120 S. Ct. 931 (2000).

inferred, were able to use the elevator). Both plaintiffs complain that the district court acted prematurely in entertaining the summary judgment motion without affording adequate time for discovery. Yet they never moved for relief under Fed. R. Civ. P. 56(f) or otherwise voiced any such objection below.[4] The issue has thus been waived, see, e.g., de la Torre v. Continental Ins. Co., 15 F.3d 12, 15 (1st Cir. 1994), and we find no plain error. Finally, they object that a motion to amend their complaint (so as to add an additional PCCF employee as defendant) was never addressed. Since an allowance of the motion would not have affected the disposition of the case, any error in this regard was harmless.

Affirmed.

---

[4] Their summary judgment opposition contained only the single closing comment that the case "must proceed to the discovery phase," while their reconsideration motion made no reference to the matter at all.