United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-30318

_____

THEODORE JOHNSON,

Plaintiff - Appellee,

v.

LOUISIANA DEPARTMENT OF EDUCATION; ET AL,

Defendants,

LOUISIANA DEPARTMENT OF EDUCATION; STATE OF LOUISIANA;
PRESIDENT OF LOUISIANA STATE UNIVERSITY SYSTEM;
BOARD OF REGENTS,

Defendants - Appellants.

_____

No. 02-30369

_____

LYNN AUGUST,

Plaintiff - Appellee,

v.

SUZANNE MITCHELL; MAE NELSON; ED BARRAS; DEPARTMENT OF
SOCIAL SERVICES, for the State of Louisiana

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana

_____

Before JONES, WIENER, and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

## BACKGROUND

This court consolidated the cases of Theodore Johnson and Lynn August due to the common issue whether Eleventh Amendment sovereign immunity bars claims for money damages against entities of the state of Louisiana, which arose during a particular time period, brought under § 504 of the Rehabilitation Act. The district courts refused to dismiss the claims. Based on the recent decision of this court in Pace v. Bogalusa City Sch. Bd., No. 01-31026, 2003 WL 1455194 (5th Cir. Mar. 24, 2003), we vacate and remand with instructions to dismiss the claims for lack of jurisdiction.

Appellee Johnson was a full time student at the University of New Orleans (UNO) on financial aid. He is disabled by a partial paralysis of his left foot. In February 2000, a medical emergency caused Johnson to withdraw from UNO. Four months later, UNO revoked Johnson's eligibility for financial aid. Johnson successfully appealed the decision. The appeals committee, however, did not inform Johnson of its decision until after the fall 2000 semester had begun; the committee also imposed academic requirements to maintain his eligibility for financial aid. Johnson asserts that because of his late start in fall semester classes, he was unable to comply with the academic requirements.

2

In January 2001, UNO denied Johnson financial aid for the spring semester. Johnson filed suit against the Louisiana Department of Education, the State of Louisiana, the President of the Louisiana State University System, the Louisiana Board of Regents, and UNO[1] under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), and § 504 of the Rehabilitation Act, alleging discrimination against disabled students and failure to provide reasonable accommodations.

August, a blind man, worked as a computer instructor for the Louisiana Department of Social Services (DSS). In June 2000, DSS eliminated August's teaching duties, averring that August failed to submit "manual materials" required for use in the computer course. August contended, to the contrary, that he submitted the necessary materials at the same time as a sighted instructor whose materials were approved. August brought various claims for money damages against the DSS and three state employees in their official capacities, including claims under the ADA and the Rehabilitation Act.

Separate district courts in the Eastern District of Louisiana dismissed all claims against the defendants based on

---

[1] The district court dismissed UNO as a defendant, concluding that the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College is the proper party to sue on behalf of UNO. Johnson amended his complaint to name the Board of Supervisors as a defendant.

state sovereign immunity except for those under § 504 of the Rehabilitation Act. The defendants appeal, arguing that state sovereign immunity bars the appellees' § 504 claims. Under the collateral order doctrine, appellate jurisdiction exists over an appeal from the denial of a motion to dismiss based on state sovereign immunity. Reickenbacker v. Foster, 274 F.3d 974, 976 (5th Cir. 2001).

## DISCUSSION

In denying the appellants' motions to dismiss Johnson's and August's § 504 claims, the district courts concluded that the appellants waived their state sovereign immunity under the Rehabilitation Act by receiving federal funds.[2] This court reviews denials of motions to dismiss based on state sovereign immunity de novo. Id. This court's recent decision in Pace, 2003 WL 1455194, mandates a different conclusion.

Under the Constitution's Article I spending power, Congress may require a state to waive its sovereign immunity as a condition for receiving federal funds if two conditions are met. Id. at *3-4. First, "Congress must 'manifest[ ] a clear intent to condition participation in the programs funded under the [relevant] Act on a State's consent to waive its constitutional immunity.'"

---

[2]Both courts acknowledged that no scope was left for congressional abrogation of state sovereign immunity by means of § 504 after this court's decision in Reickenbacker, supra.

4

Id. at *3 (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 247, 105 S.Ct. 3142, 3149-50, 87 L.Ed.2d 171, 183 (1985)).  Second, the state must knowingly and voluntarily waive its immunity by accepting the funds.  Id. at *4-5.

Pace held that 42 U.S.C. § 2000d-7[3] clearly, unambiguously, and unequivocally conditions the receipt of federal funds on a state's waiver of sovereign immunity under § 504 of the Rehabilitation Act.  Id. at *3.  Like the defendants in Pace, however, the appellants in this case did not knowingly waive their sovereign immunity under § 504 by accepting federal funds.  Johnson and August both complain of violations of § 504 that occurred before the Supreme Court's decision in Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001) (holding that Title I of the ADA does not validly abrogate state sovereign immunity pursuant to § 5 of the Fourteenth Amendment) and this court's decision in Reickenbacker, 274 F.3d at 976 (concluding that Title II of the ADA and § 504 of the Rehabilitation Act do not validly abrogate state sovereign immunity pursuant to Fourteenth Amendment § 5 powers).[4]  As we explained in

---

[3]42 U.S.C. § 2000d-7 provides in pertinent part that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973."

[4]Johnson alleges wrongful acts by the appellants in 2000 and in January 2001, and August alleges wrongful acts in 1999 and 2000.

5

Pace, prior to Garrett and Reickenbacker the appellants had "little reason to doubt the validity of Congress's asserted abrogation of state sovereign immunity under § 504 of the Rehabilitation Act or Title II of the ADA," id. at *5, especially given this court's decision in Coolbaugh v. Louisiana, 136 F.3d 430 (5th Cir. 1998) (holding that the ADA validly abrogated state sovereign immunity as an exercise of Fourteenth Amendment § 5 powers), overruled by Reickenbacker, 274 F.3d 974 (5th Cir. 2001). "Believing that the acts validly abrogated their sovereign immunity, the [appellants] did not and could not know that they retained any sovereign immunity to waive by accepting conditioned federal funds." Pace, 2003 WL 1455194, at *5.[5] Because the appellants could not have knowingly waived their sovereign immunity during the period covered by their lawsuits, Johnson's and August's individual claims for money damages under § 504 are barred.[6] We re-emphasize the court's comment in Pace that the State's victory will be temporally confined, since after Garrett, the state could knowingly waive its immunity by voluntarily continuing to receive federal funds conditioned on waiver. See id. at *6 n.15.

---

[5]The abrogation analysis with regard to Title II of the ADA and § 504 of the Rehabilitation Act is the same because both acts offer virtually identical protections. Pace, 2003 WL 1455194, at *5 n.11; Reickenbacker, 274 F.3d at 977 n.17.

[6]We therefore need not reach the appellants' alternative argument that they lacked authority under state law to waive their sovereign immunity against suit in federal court.

## CONCLUSION

State sovereign immunity bars Johnson's and August's § 504 claims for money damages against the appellants. We therefore vacate the district courts' denials of the appellants' motions to dismiss and remand with instructions to dismiss these claims for lack of jurisdiction.

**VACATED** and **REMANDED.**

Wiener, Circuit Judge, either dissenting or specially concurring.*******

The premise of the instant case is simple: Exercising its Spending Clause powers, Congress offers education funds to the several states under Title X, on the <u>condition</u>, pellucidly expressed in 42 U.S.C. § 2000d-7(a)(1), that states accepting such funds will <u>not</u> be immune under the Eleventh Amendment from suit in federal court for violation of § 504 of the Rehabilitation Act and other named federal statutes, including Title IX, the Individuals with Disabilities in Education Act ("IDEA"), and the Americans with Disabilities Act ("ADA"). The Louisiana defendants accepted the funds on that express condition, then proceeded to assert sovereign immunity under the Eleventh Amendment after being sued in federal

---

******* Because of an artificially created, and, in my judgment, unfortunate sequence of events, it is impossible at this juncture to determine whether this writing will be a special concurrence or a dissent: (1) In November 2002, a panel of this court comprising Judges Jones, Smith, and —— by designation —— Siler of the Sixth Circuit, heard oral argument in <u>Pace v. Bogalusa City School Board</u>, No. 01-31026, and Judge Jones, as presiding judge of the panel, allotted the writing assignment to herself; (2) on February 11, 2003, while <u>Pace</u> remained under submission, a panel of this court comprising Judge Jones, myself, and DeMoss heard argument on the instant case, and Judge Jones, as presiding judge of the panel, allotted the writing assignment to herself; (3) six weeks later, on March 24, 2003, while the instant case remained under submission, Judge Jones filed her opinion in <u>Pace</u>, 2003 WL 1455194 (5th Cir. Mar. 24, 2003); and (4) on April 9, 2003, Judge Jones circulated to the panel her foregoing opinion in the instant case, rejecting my suggestion that prudence and orderliness require holding this case in abeyance until the time for filing petitions for rehearing in <u>Pace</u> expires (it still has not) and the mandate issues, either as a result of (a) our failure to rehear <u>Pace</u> en banc, (b) our having reheard and disposed of <u>Pace</u> en banc. Thus, until the mandate issues in <u>Pace</u>, finally determining the issue that controls in that case and in this one, it will be impossible to classify my writing either as a special concurrence or as a dissent. Only time will tell.

court on claims grounded in the Rehabilitation Act. The panel majority has accepted the Louisiana defendants's premise, reversed the district court, and granted immunity.

The decision in this case, though, is not ours to make, at least not yet. Only if the very recent (and as yet not precedential) decision by a prior panel of this court is <u>not</u> reheard en banc, or is reheard but is decided the same way, will this panel be bound. I refer to <u>Pace v. Bogalusa City School Board</u>,[1] which involved precisely the same assertions of Eleventh Amendment immunity by Louisiana defendants in a lawsuit brought under the IDEA, ADA and Rehabilitation Act. In an unanimous opinion, the <u>Pace</u> panel extended sovereign immunity to the Louisiana defendants, reasoning that they could not have "knowingly waived" their sovereign immunity prior to this court's decision in <u>Reickenbacker v. Foster</u>[2] in 2001.[3]

If <u>Pace</u> does become precedent, this panel will have no wiggle room: We will be bound by <u>stare decisis</u>. With respect, however, I am convinced that the <u>Pace</u> panel misapplied the "knowing waiver" test — actually, applied the <u>wrong</u> "waiver" test — and thus, putting it candidly, wrongly decided <u>Pace</u>. I hope that our court

---

[1] <u>Id.</u>

[2] 274 F.3d 974 (5th Cir. 2001).

[3] <u>Pace</u>, 2003 WL 1455194, at *1-*5.

9

will correct this wrong by rehearing <u>Pace</u> en banc. While tentatively concurring with the panel majority's <u>decision</u> in this case — per our obligation to follow decisions of prior panels — I must respectfully express my disagreement with the <u>analysis</u> employed in <u>Pace</u> and, through it, in the instant case, and thus my disagreement with the results reached in both.

The fundamental problem with the reasoning of the panel majority here — repeating the problematic reasoning first employed in <u>Pace</u> — is that it conflates the "knowing waiver" exception of Fourteenth Amendment abrogation of sovereign immunity with the "clearly and unambiguously stated/non-coercive" waiver exception for Spending Clause cases. Although both exceptions are confusingly referred to in the case law as "waiver" doctrines, they embody entirely different tests, the latter being less a true waiver and more an acceptance of a <u>condition</u> <u>precedent</u> to entitlement to the federal funds.

The relevant statute in both <u>Pace</u> and here — § 504 of the Rehabilitation Act — was enacted in 1973. Originally, it purported to waive state sovereign immunity pursuant to Congress's power to abrogate such immunity under § 5 of the Fourteenth Amendment.[4] In 1985, though, the Supreme Court held that the Rehabilitation Act neither abrogated state sovereign immunity under

---

[4] <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 244 n.4 (1985).

the Fourteenth Amendment nor waived state sovereign immunity under the Spending Clause because it did not express "unequivocal congressional intent" that, under this statute, states would be susceptible to suit in federal court.[5]  The following year, Congress responded by amending and re-enacting the Rehabilitation Act with 42 U.S.C. § 2000d-7 to include an express condition precedent to a state's waiver of sovereign immunity for any state that accepts federal funds made available under Congress's Spending Clause power.  In other words, Congress explicitly chose to re-enact the Rehabilitation Act's waiver of state sovereign immunity under its Spending Clause power.[6]

Thus, in analyzing whether the Louisiana defendants relinquished their sovereign immunity under § 504 of the Rehabilitation Act and § 2000d-7(a)(1) when they accepted federal education money, the panel in Pace should have applied the condition precedent waiver exception of the Constitution's Spending Clause to state sovereign immunity.  Instead, the Pace court applied the "knowing waiver" exception — wrongly, I respectfully

---

[5] Id. at 247.

[6] Even before the Supreme Court's decision in Atascadero, the Spending Clause was replacing the Fourteenth Amendment as the constitutional hook on which to hang Congress's waiver of state sovereign immunity in the Rehabilitation Act.  See Atascadero, 473 U.S. at 244 n.4 (noting that Petitioners were defending the Rehabilitation Act's waiver of state sovereign immunity under Congress's Spending Clause power, although Petitioners conceded that the statute was originally enacted under Congress's Fourteenth Amendment powers).

11

submit — which is specifically prescribed by the Supreme Court only for federal "abrogation" statutes enacted by Congress pursuant to § 5 of the Fourteenth Amendment. This distinction is critically important, because employing the "waiver" test that is proper for the Spending Clause leads inescapably to the conclusion that the Louisiana defendants validly relinquished their right to claim sovereign immunity by accepting federal funds. This result flows from the crystal clear, express condition precedent in § 2000d-7(a)(1) that by accepting the money, a State agrees to be subject to, inter alia, § 504 of the Rehabilitation Act and to suit in federal court on claims arising under that statute — even if the Louisiana defendants might have believed mistakenly that they had no immunity to waive.

Justice Scalia's majority opinion for College Savings Bank[7] explains that the "knowing waiver" analysis applies only to federal statutes enacted pursuant to § 5 of the Fourteenth Amendment; that, in contrast, when a federal Spending Clause statute forthrightly conditions a state's acceptance of a congressional "gift" of funds on the state's relinquishment of sovereign immunity as an automatic consequence of such acceptance,[8] a "fundamentally different" issue

---

[7] 527 U.S. 666 (1999).

[8] Id. at 686-87 (noting that "Congress has no obligation to use its Spending Clause power to disburse funds to the States; such funds are gifts").

12

is presented.[9]  In Spending Clause cases, the only limitation on Congress's power to impose an express <u>condition</u> <u>precedent</u> of relinquishing sovereign immunity is that the statute thus conditioning acceptance of funds not be "coercive."  As long as the condition is not coercive, the relinquishment of sovereign immunity is valid.[10]  The Court emphasized in <u>College Savings Bank</u> that this is a significantly lower constitutional hurdle for a federal statute than the one that must be cleared to establish "knowing waiver" of sovereign immunity under § 5 of the Fourteenth Amendment.[11]

As the <u>College Savings Bank</u> Court explained, statutes that impute waiver of sovereign immunity as an <u>ipso</u> <u>facto</u> consequence of a state's acceptance of federal monies would be "coercive" only at the point "at which 'pressure turns into compulsion,'"[12] such as by requiring the state to refrain "from otherwise lawful activity."[13]

---

[9] <u>Id.</u> at 686.

[10] <u>Cf.</u> <u>Grove City Coll. v. Bell</u>, 465 U.S. 555, 575 (1984) (noting in Title IX case that "Congress is free to attach reasonable and unambiguous conditions to federal financial assistance that educational institutions are not obligated to accept").

[11] The Court explained that the government's conditioning of federal highway funds on a state's setting its minimum drinking age at 21 years of age was <u>not</u> a "coercive" conditional grant of federal funds.  <u>Id.</u> at 686.  <u>See</u> <u>South Dakota v. Dole</u>, 483 U.S. 203 (1987).

[12] <u>Id.</u> at 687 (quoting <u>South Dakota v. Dole</u>, 483 U.S. 203, 211 (1987) (quoting <u>Steward Machine Co. v. Davis</u>, 301 U.S. 548, 590 (1937))).

[13] <u>Id.</u>

A state's acceptance of Spending Clause money is inextricably intertwined with any conditions clearly expressed and attached by Congress, one of which can be and frequently is the relinquishment of sovereign immunity.[14] This is consistent with our longstanding recognition of Congress's far-reaching power under its Spending Clause prerogative to place conditions on financial "gifts" to the states, which they are free to accept or reject by accepting or rejecting the grant.[15]

The upshot of this analysis is that when a Spending Clause statute clearly imposes, as an automatic <u>condition</u> <u>precedent</u> to obtaining federal funds under such a statute, the recipient state's commitment not to invoke sovereign immunity, and a state accepts the funds on that condition, it is wholly inappropriate for a court to embark on the "knowing waiver" analysis announced by the Court in <u>College Savings Bank</u> for determining whether Congress has validly abrogated a state's sovereign immunity under § 5 of the Fourteenth Amendment. To do so is to turn a blind eye on the universally recognized distinction between those statutes that would <u>abrogate</u> a state's sovereign immunity under the Fourteenth

---

[14] For example, Congress's Spending Clause power to condition a state's receipt of federal funds in the Medicaid program on a state's waiver of its sovereign immunity to suits thereunder has been recently affirmed by two circuit courts. See <u>Westside Mothers v. Haveman</u>, 289 F.3d 852 (6th Cir. 2002); <u>Antrican v. Odom</u>, 290 F.3d 178 (4th Cir. 2002).

[15] See <u>United States v. Lipscomb</u>, 299 F.3d 303, 318-24 (5th Cir. 2002) (discussing Congress's power under the Spending Clause).

14

Amendment and those that elicit a state's <u>agreement</u> not to assert sovereign immunity as a <u>condition</u> <u>precedent</u> of its acceptance of federal funding offered by Congress under its Spending Clause powers.[16]  Yet, the panel opinion in <u>Pace</u> does exactly this: It applies the "knowing waiver" test from <u>College Savings Bank</u> immediately after it discusses Congress's valid waiver, under the Spending Clause, of state sovereign immunity in the Rehabilitation Act.[17]  This unwarranted judicial cross-over produces an erroneous and impermissible confusing or conflating of two parallel but "fundamentally different" lines of jurisprudence.[18]

As the 1986 version of the statute at issue in both <u>Pace</u> and this case — the Rehabilitation Act — was indisputably re-enacted pursuant to Congress's Spending Clause power, the only permissible inquiry in these post-1986 cases is (1) whether the <u>condition</u>

---

[16] Justice Scalia's opinion for the Court in <u>College Savings Bank</u> goes so far as to criticize Justice Breyer's dissent for asserting that the distinction between these two separate waiver doctrines "disappears" in some contexts, despite Justice Breyer's acknowledging that there is an "intuitive difference" between the two tests.  <u>College Savings Bank</u>, 527 U.S. at 687.

[17] <u>Pace</u>, 2003 WL 1455194, at *2-*4.

[18] <u>See</u> <u>Douglas v. Cal. Dep't of Youth Auth.</u>, 271 F.3d 812, 820 n.5 (9th Cir. 2001) (noting that <u>College Savings Bank</u> is inappposite to those cases analyzing a waiver of sovereign immunity conditioned on a grant of funds under Congress's Spending Clause power). <u>See also</u> <u>College Savings Bank</u>, 527 U.S. at 686 (noting that Spending Clause "cases seem to us <u>fundamentally</u> <u>different</u> from the present one" that involves solely a question of a "knowing" waiver under the Fourteenth Amendment) (emphasis added).

15

precedent is clearly and unambiguously expressed in the statute, and (2) if it is thus clearly expressed, does this condition "coerce" a waiver from the states in exchange for their obtaining federal funds. As for the clear expression prong of the test, the relevant statutory provision concerning § 504 of the Rehabilitation Act and sovereign immunity states:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . or of the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.[19]

It cannot be questioned — at least not seriously — that this statute explicitly predicates a state's gaining access to federal monies on that state's commitment not to assert sovereign immunity if suits are brought under § 504 of the Rehabilitation Act. This condition applies to any state that accepts these funds, regardless of whether the state "believes" that it does or does not have any immunity to the Rehabilitation Act to relinquish. More important, when the Louisiana defendants took the money, the Supreme Court had already blessed the Rehabilitation Act as the paragon of drafting by Congress of a proper waiver under its Spending Clause power. In Lane v. Pena, the Court ruled that the current, 1986 version of the Rehabilitation Act

was enacted in response to our decision in Atascadero

---

[19] 42 U.S.C. § 2000d-7(a)(1).

> State Hospital v. Scanlon, 473 U.S. 234, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985), where we held that Congress had not unmistakably expressed its intent to abrogate the States' Eleventh Amendment immunity in the Rehabilitation Act, and that the States accordingly were not "subject to suit in federal court by litigants seeking retroactive monetary relief under § 504." <u>Id.</u> at 235, 105 S. Ct. at 3143-3144.  By enacting [42 U.S.C. § 2000d-7], <u>Congress sought to provide the sort of unequivocal waiver that our precedents demand</u>.[20]

In fact, the Supreme Court went so far as to praise "the care with which Congress responded to our decision in <u>Atascadero</u> by crafting an unambiguous waiver of the States' Eleventh Amendment immunity" in the amended and re-enacted Rehabilitation Act.[21]  No room is left for doubt, particularly after the <u>Lane</u> Court's ruling in 1996, that the express terms of the Rehabilitation Act clearly and unambiguously create a valid, <u>ipso</u> <u>facto</u> waiver of state sovereign immunity under Congress's Spending Clause power as a <u>condition precedent</u> to accepting the offered funds — a condition that ripens into irrevocability on acceptance of the funds.

As for the coercion prong of the test for conditions imposed in Spending Clause statutes, there is not even a whiff of duress in the conditional grant language in the Rehabilitation Act.  Indeed, it is far less controlling of a state's behavior than the minimum-age drinking laws that were imposed on the states through Congress's exercise of its Spending Clause power, and which were

---

[20] <u>Lane v. Pena</u>, 518 U.S. 187, 200 (1996) (emphasis added).

[21] <u>Id.</u>

17

specifically approved by the Supreme Court in <u>South Dakota v. Dole</u>.[22] As the Fourth Circuit recently held in adjudicating a Title IX case under the same waiver statute that applies to the Rehabilitation Act:

> [A]ny state reading § 2000d-7(a)...would clearly understand the following consequences of accepting Title IX funding: (1) the state must comply with Title IX's antidiscrimination provisions, and (2) it consents to resolve disputes regarding alleged violations of those provisions in federal court.[23]

There was simply no legal or factual justification for applying the Fourteenth Amendment's "knowing waiver" test in <u>Pace</u> and none exists in this case; indeed, to do so is error as a matter of law. Rather, the <u>only</u> proper inquiry in either case is straightforward: Is the Rehabilitation Act's clearly stated condition that a state not assert sovereign immunity coercive? It obviously is not. As previously noted by six of our fellow circuits, the statute is clear; it contains an express condition under Congress's Spending Clause power for waiver of state sovereign immunity, <u>and</u> there is nothing coercive about it.[24]

---

[22] 483 U.S. at 206.

[23] <u>Litman v. George Mason Univ.</u>, 186 F.3d 544, 554 (4th Cir. 1999).

[24] <u>See</u> <u>Koslow v. Pennsylvania</u>, 302 F.3d 161, 171 (3d Cir. 2002) (holding that the Rehabilitation Act contains an "ordinary <u>quid</u> <u>pro</u> <u>quo</u> that the Supreme Court has repeatedly approved"); <u>Nihiser v. Ohio Envtl. Prot. Agency</u>, 269 F.3d 626, 628 (6th Cir. 2001) (holding that "a plaintiff may sue a State under Section 504 of the Rehabilitation Act" because § 2000d-7 is "a valid and unambiguous waiver"); <u>Jim C. v. United States</u>, 235 F.3d 1079, 1082 (8th Cir. 2000) (en banc) (holding that the statute's clear language provided for a valid waiver of state sovereign immunity); <u>Stanley v. Litscher</u>, 213 F.3d 340, 344 (7th Cir. 2000) (noting that "the Rehabilitation

Even more to the point, it matters not one iota that the Louisiana defendants now say, self-servingly, that they believed they had no immunity to waive, and thus cannot be held to the statute's condition precedent of waiver. That is wholly illogical and irrelevant: The only material point is that when these defendants took the money, they had no expectation of immunity, regardless of whether this absence of expectation resulted from their own mistake of law (never an excuse) or from a correct reading of the applicable federal legislation. In buying into the Louisiana defendants's groundless mistake of law defense, the panel opinion in Pace relies on a Second Circuit opinion that also impermissibly crosses jurisprudential lines in applying the Fourteenth Amendment's "knowing waiver" test to the Rehabilitation Act's condition precedent waiver, which was enacted under Congress's Spending Clause power. Thus, Pace would put this court on the side of the Second Circuit in the circuit split that it created with the six other circuits that have analyzed the Rehabilitation Act properly as providing a waiver of state sovereign immunity under Congress's Spending Clause power

---

Act is enforceable in federal court against recipients of federal largess"); Sandoval v. Hagan, 197 F.3d 484. 493 (11th Cir. 1999) (holding that the terms of the Rehabilitation Act provide for a "clear" waiver of state sovereign immunity under the Spending Clause), rev'd on other grounds, Alexander v. Sandoval, 531 U.S. 1049 (11th Cir. 2000); Clark v. California, 123 F.3d 1267, 1271 (9th Cir. 1997) (holding that "the Rehabilitation Act manifests a clear intent to condition a state's participation on its consent to waive its Eleventh Amendment immunity").

19

_simpliciter_.[25]

Either way, though, the Louisiana defendants made a conscious ⸺ "knowing" ⸺ choice (1) to accept the federal funds _and_, (2) vis-à-vis _those_ _funds_, to be subject to the Rehabilitation Act and to a lawsuit in federal court on Rehabilitation Act claims. The Louisiana defendants's acceptance of the funds pursuant to the clear wording of the statute triggered the Rehabilitation Act's waiver of state sovereign immunity. Thus, they cannot now assert ⸺ nor at any time after the 1986 enactment of § 2000d-7 could they ever have asserted ⸺ sovereign immunity against Rehabilitation Act claims.

For these reasons, I specially concur in the decision of the panel majority _if_, in the final analysis, _Pace_ should become binding precedent; otherwise, I respectfully dissent. Either way, though, I remain in fundamental disagreement with the reasoning and testing methodology of the panel opinion in _Pace_ and thus with the panel majority's opinion here based on _Pace_. If, however, a majority of the judges in active service on this court agree to rehear _Pace_ en banc, and the en banc court then decides _Pace_ as I advocate in this opinion, the instant case will be returned to this

---

[25] Compare supra note 24 (listing six circuit opinions analyzing the Rehabilitation Act and § 2000d-7 under the proper Spending Clause test) and note 18 (identifying another Ninth Circuit case that explicitly makes the same point as here) with Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98 (2d Cir. 2001).

panel for correction.  Otherwise, it shall be up to the Supreme Court to right the wrong that I perceive in <u>Pace</u> and thus in the panel majority's reliance on it here.